IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: : | |
| : | CHAPTER 7 |
| BETTY L. MORRIS, : | |
| : | CASE NO. 1-14-bk-03161 RNO |
| Debtor : | |
| CAROL WINEBRENNER, : | |
| : | |
| Movant : | |
| : | |
| v. : | |
| : | |
| BETTY L. MORRIS and : | |
| JOHN P. NEBLETT, TRUSTEE : | |
| : | |
| Respondents : | |

**OPINION**[1]

The Chapter 7 Debtor received a bankruptcy discharge in October 2014. The case was reopened in February 2017 to consider a motion filed by a personal injury claimant who commenced a pre-bankruptcy state court action against the Debtor. The Claimant has moved for a declaration that her state court action, which she wishes to pursue only to the extent of available liability insurance coverage, is not stayed by the discharge injunction imposed by § 524 of the Bankruptcy Code. For the reasons stated in this Opinion, I conclude that the state court personal injury action is not prohibited and can proceed.

**I.    Jurisdiction**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

---

[1] Drafted with the assistance of Maria Babajanian, Esq., Law Clerk.

1

## II. Facts and Procedural History

Betty Morris ("Debtor/Defendant") filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code on July 7, 2014. On August 25, 2014, the Chapter 7 Trustee filed a Report of No Distribution, ECF No. 12, and the Debtor/Defendant received a Chapter 7 Discharge on October 27, 2014, ECF No. 14.

On February 13, 2017, Carol Winebrenner ("Plaintiff/Claimant") filed a Motion to Reopen the Chapter 7 case, ECF No. 18, and the bankruptcy case was reopened on February 22, 2017, ECF No. 23. The Plaintiff/Claimant is the plaintiff in a personal injury action against the Debtor/Defendant, which was pending on the petition date in the Pennsylvania Court of Common Pleas of Franklin County ("Personal Injury Action"). On February 23, 2017, the Plaintiff/Claimant filed a Motion for Relief from the Injunction of 11 U.S. Code § 524 of the Bankruptcy Code and to the Bankruptcy Discharge in Order that the Movant Be Permitted to Pursue a Liability Insurance Policy in Effect Prior to the Debtor's Discharge ("Motion"). ECF No. 24. On March 9, 2017, the Debtor/Defendant filed an Answer with New Matter in opposition to the Motion. ECF No. 30.

Federal Rule of Evidence 201 allows a Federal Court to take judicial notice of facts that are not subject to reasonable dispute. A bankruptcy court may take judicial notice of the docket events in a case and the contents of the bankruptcy schedules to determine the timing and status of case events, as well as other facts not reasonably in dispute. *In re Harmony Holdings, LLC*, 393 B.R. 409, 413 (Bankr. D.S.C. 2008); *In re Paolino*, 1991 WL 284107, at *12 n.19 (Bankr. E.D.Pa., Jan. 11, 1991).

I take judicial notice of the docket entries in the Debtor/Defendant's Chapter 7 case. I also take judicial notice of the contents of the bankruptcy schedules and statements, which are

not subject to reasonable dispute. I also take judicial notice of docket entry 13, filed on September 18, 2014, Amended Schedule F - Creditors Holding Unsecured Non Priority Claims. The amendment added the Plaintiff/Claimant as a creditor describing the claim as "possible claim from auto accident" and the amount of the claim as "unknown." ECF No. 13.

The parties filed a Stipulation of Undisputed Facts on April 17, 2017 ("Stipulated Facts"). ECF No. 38.

One of the exhibits attached to the Motion is a copy of the prepetition state court complaint filed in the Personal Injury Action. The complaint avers that on May 31, 2014, the Plaintiff/Claimant was injured in a motor vehicle accident in Waynesboro, Pennsylvania. It is alleged that the motor vehicle accident was due to the negligence of the Debtor/Defendant. The state court complaint also alleges that, as a result of the accident, the Plaintiff/Claimant suffered serious injuries, including cervical herniations and cervical disc bulging.

The core of the Plaintiff/Claimant's position is that the discharge injunction does not prohibit her from proceeding with the Personal Injury Action, with any recovery limited to available liability insurance coverage. That is, with no personal liability being assessed, or collected, from the Debtor/Defendant or her assets.

The Debtor/Defendant advances three principal positions. First, the Motion is characterized as seeking a revocation of discharge, which the Debtor/Defendant maintains is untimely under § 727(e). Second, she argues that the state court in Franklin County is the best forum to address the issues raised by the Motion. Third, that the discharge injunction prohibits continuation of the Personal Injury Action, even though recovery would be limited to applicable insurance coverage.

3

III.     Discussion

   A.     Does the Discharge Revocation Deadline Apply?

A revocation of discharge is exceptional relief and is allowed only in limited circumstances. In a Chapter 7 case, revocation of discharge is provided for in § 727(d), which states:

> (d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if --
>    (1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge;
>    (2) the debtor acquired property that is property of the estate, or became entitled to acquire property that would be property of the estate, and knowingly and fraudulently failed to report the acquisition of or entitlement to such property, or to deliver or surrender such property to the trustee;
>    (3) the debtor committed an act specified in subsection (a)(6) of this section; or
>    (4) the debtor has failed to explain satisfactorily --
>       (A) a material misstatement in an audit referred to in section 586(f) of title 28; or
>       (B) a failure to make available for inspection all necessary accounts, papers, documents, financial records, files, and all other papers, things, or property belonging to the debtor that are requested for an audit referred to in section 586(f) of title 28.

A revocation of discharge is contrary to the fresh start purposes of a bankruptcy discharge. Therefore, the requirements of § 727(d) are strictly construed against the party seeking revocation. *In re Shiloh*, 2011 WL 3204916, at *1 (Bankr. M.D.Pa. July 26, 2011); *In re Rodwell*, 280 B.R. 100, 101 (Bankr. D.N.J. 2002).

4

Section 727(e) establishes deadlines for discharge revocation actions providing:

> (e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge --
> (1) under subsection (d)(1) of this section within one year after such discharge is granted; or
> (2) under subsection (d)(2) or (d)(3) of this section before the later of --
> (A) one year after the granting of such discharge; and
> (B) the date the case is closed.

The Motion was filed on February 23, 2017. The Debtor/Defendant's Chapter 7 discharge was entered on October 27, 2014, and the case was originally closed on October 27, 2014. Thus, *if* the Motion is seeking a revocation of discharge, it would be untimely. *In re Abdelmassia*, 362 B.R. 207, 212-13 (Bankr. D.N.J. 2007); *In re Stedham*, 327 B.R. 889, 905 (Bankr. W.D.Tenn. 2005).

The Motion simply does not seek a revocation of discharge. Rather, I find the Motion asks this Court to determine what claims were, and were not, included in the discharge granted to the Debtor/Defendant. More specifically, the Motion presents this question; is a claim, in name only against the Debtor/Defendant, which seeks actual recovery only from her insurance carrier included in, or excluded from, the discharge? This seems roughly analogous to a matter under § 362(b), seeking the court to determin whether a proposed action is, or is not, subject to the automatic stay. *Penn Terra Ltd. v. Dept. of Envtl. Res., Comm. of Pa.*, 733 F.2d 267, 278-79 (3d Cir. 1984) (equitable action by state to require correction of environmental violations not subject to automatic stay); *In re Bartel*, 395 B.R. 208, 213-14 (Bankr. D.Mass. 2008) (discussing the criminal action exception to the automatic stay, as a defense to a stay violation action). The decisions in *Penn Terra* and *Bartel* did not terminate or annul the automatic stay, they determined the extent of the automatic stay, and exceptions thereto. Similarly, here, the Motion

does not seek a revocation of discharge. Rather, the Plaintiff/Claimant seeks a determination of the extent of the discharge, and the applicability of a statutory exception thereto.

None of the Court of Appeals decisions summarized in Section C of this discussion characterized their decisions as concerning revocations of discharge. I conclude that the time limits imposed by § 727(e) simply have no applicability. This defense by the Debtor/Defendant is unavailing and is overruled. For the same reasons, I conclude that the requirement that an action to revoke a discharge must be brought as an adversary proceeding is also inapplicable. *See* F.R.B.P. 7001(4). *In re Anderson*, 476 B.R. 668, 672 n.4 (1st Cir. B.A.P. 2012).

**B.     Should the State Court Determine the Extent of the Discharge?**

The Debtor/Defendant argues that the issues in this matter "are more appropriately addressed to the State Court." Br. of Debtor on Movant's Mot. For Relief from Injunction Under 11 U.S.C. §524, 7, ECF No. 30-4.

Comity between federal and state courts is essential to the jurisprudential landscape envisioned by the Founders, implemented by acts of Congress and state legislatures, and ultimately interpreted by the courts. The federal comity doctrine counsels lower federal courts to refrain from deciding matters which would show a lack of proper respect for functions of the various states. *Levin v Commerce Energy, Inc.*, 130 S.Ct. 2323, 2330 (2010) (noting the particular importance of comity when lower federal courts are asked to rule on the constitutionality of state taxation of commercial activities). A question of comity arises when there is "tension . . . between courts and/or agencies having concurrent jurisdiction over the same matter." *Pennsylvania State Troopers' Assn. v. Pennsylvania Labor Relations Bd.,* 671 A.2d 1183, 1187 (Pa.Commw.Ct. 1996), *appeal denied,* 545 Pa. 657, 680 A.2d 1164 (1996); *Yaracs v.*

*Summit Academy*, 845 A.2d 203, 208-09 (Pa.Commw.Ct. 2004) (comity principle prevented state court from addressing attack upon consent order entered in federal court action).

The Motion does not ask that I rule upon some aspect of Pennsylvania law, nor does it question state law. This Court has great respect for the Courts of the Commonwealth of Pennsylvania. I would never presume that the Personal Injury Action could be litigated in this Court. Today, I make no findings concerning the ultimate validity of the Plaintiff/Claimant's causes of action under state law. Those are matters which I defer to the state court forum. However, respectfully, construing the breadth of the bankruptcy discharge, and determining what is prohibited by the discharge injunction, are best addressed by this Court.

The discharge injunction arises upon discharge, by operation of law, pursuant to § 524. It is, if you will, a virtual injunction; as opposed to an actual or "paper" injunction issued by a court granting injunctive relief. *See In re Fauser*, 545 B.R. 907, 912 (Bankr. S.D.Tex. 2016); *In re Forson*, 549 B.R. 866, 870 (Bankr. S.D.Ohio 2016) (court dismissed class action discharge injunction violation claim). Whether a court issues a virtual or actual injunction, where should one seek clarification of the extent of the injunction? The obvious answer is the issuing court, or an appellate court of appropriate jurisdiction. A bankruptcy court has jurisdiction to determine the scope and effect of the orders it enters. *In re Pub. Serv. Co. of New Hampshire*, 148 B.R. 702, 705 (Bankr. D.N.H. 1992). The issuing court is in the best position to interpret its own orders. *Hastert v. Illinois State Bd. of Election Com'rs*, 28 F.3d 1430, 1438 (7th Cir. 1993); *In re Chicago, Rock Island & Pac. R.R. Co.*, 860 F.2d 267, 272 (7th Cir. 1988).

There is authority that state courts have concurrent jurisdiction regarding the scope of a debtor's discharge and the enforcement of the discharge injunction. *In re Metro*, 2008 WL 1348665 at *2 (Bankr. E.D.Pa. Apr. 7, 2008). This Court is experienced in construing the

7

Case 1:14-bk-03161-RNO    Doc 42    Filed 04/28/17    Entered 04/28/17 11:13:34    Desc
Main Document    Page 7 of 15

provisions of the Bankruptcy Code. A debtor's discharge is a fundamental consideration in bankruptcy cases. I defer to the state court forum for consideration of the appropriate negligence standards and any contractual issues concerning the insurer's liability. However, I conclude that, in this instance, concerns of comity and judicial economy dictate that the discharge injunction issue is best adjudicated in Federal Court.

### C. Extent of Discharge Injunction Under Section 524(a).

One of the hallmarks of bankruptcy relief is a financial fresh start for the debtor who has received a discharge. *Grogan v. Garner*, 111 S.Ct. 654, 659 (1991) (referring to the fresh start policy of the Bankruptcy Code); *In re Staub*, 256 B.R. 567, 570 (Bankr. M.D.Pa. 2000).

The bankruptcy fresh start is implemented by the discharge injunction imposed by 11 U.S.C. § 524(a).2 The discharge injunction protects the debtor from, for example, being subjected to collection tactics concerning discharged debts. *In re Meyers*, 344 B.R. 61, 67 (Bankr. E.D.Pa. 2006). Also, the discharge injunction prohibits a judgment creditor from executing upon, or otherwise seizing, the assets of the debtor to satisfy a judgment. *In re Fonner*, 262 B.R. 350, 358 (Bankr. W.D.Pa. 2001).

In construing the meaning of a Bankruptcy Code provision, it is important to begin with the language of the statute itself. It is the cardinal canon of statutory interpretation that a court must begin with the statutory language. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (internal

---

2    Unless otherwise noted, all future statutory references are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 37 ("Bankruptcy Code").

8

citations and quotations omitted); *see also Price v. Del. State Police Fed. Credit Union*, 370 F.3d 362, 368 (3d Cir. 2004) ("We are to begin with the text of a provision and, if its meaning is clear, end there."). Where the statutory language is unambiguous, the court should not consider statutory purpose or legislative history. *See AT&T, Inc. v. F.C.C.*, 582 F.3d 490, 498 n.7 (3d Cir. 2009).

Congress created the discharge injunction in § 524(a), which provides, in part:

> (a) A discharge in a case under this title [Title 11] --
> (1) voids any judgment at any time obtained, *to the extent that such judgment is a determination of the personal liability of the debtor* with respect to any debt discharged under section 727 . . .

11 U.S.C. § 524(a) (emphasis added). Consistent with the notion that the discharge is personal to the debtor, the Bankruptcy Code further provides:

> . . . discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt.

11 U.S.C. § 524(e).

A learned bankruptcy commentator, discussing § 524(e), has noted:

> It is generally agreed that the debtor's discharge does not affect the liability of the debtor's insurer for damages caused by the debtor and the creditor may seek to recover from the insurer.

4 Collier on Bankruptcy ¶524.05 at 514-59 (Alan N. Rensick & Henry J. Sommer eds. 16 ed. 2016).

Several Courts of Appeals have considered the effect of a civil defendant's bankruptcy discharge on his liability insurer. I offer a brief synopsis of some of those decisions.

In *Green v Welsh*, 956 F.2d 30 (3d Cir. 1992), the Second Circuit reviewed a plaintiff's efforts to proceed with a negligence action in a New York trial court. The defendant had

obtained a Chapter 7 bankruptcy discharge. The Second Circuit stressed that the discharge provisions contained in §§ 524(a) and (e) were designed to achieve different ends. Subsection (a), to free the debtor of his personal obligations and Subsection (e), to ensure that no third party would be relieved of its independent obligations by virtue of the debtor's discharge. Consistent with this reasoning, the Court held that the plaintiff could proceed against the debtor solely to recover from the debtor's insurer. *Id.* at 33-36.

The Fifth Circuit considered the propriety of a plaintiff's state court medical malpractice action. The defendant/physician had obtained a Chapter 7 bankruptcy discharge and the plaintiff had not participated in the bankruptcy case. The Fifth Circuit noted that Texas law did not allow direct actions against the insurer. It held that the physician's personal bankruptcy discharge did not relieve the insurer of its obligations; it also found that the proceeds of the insurance policy, potentially payable to the plaintiff, were not property of the bankruptcy estate. Circuit Judge Jones wrote:

> A discharge in bankruptcy does not extinguish the debt itself, but merely releases the debtor from personal liability for the debt. Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable.

*Matter of Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993).

The Eleventh Circuit addressed essentially the same question when considering an appeal from a denial of relief from the bankruptcy discharge injunction. The plaintiff sought to proceed with a pre-petition defamation action "in order to seek a judgment of liability against the Debtor so that he may proceed against the Debtor's liability insurer." *In re Jet Florida Sys., Inc.*, 883 F.2d 970, 971 (11th Cir. 1989). The Court of Appeals discussed how a bankruptcy discharge allows the *debtor* to obtain a financial fresh start. The opinion also explains how the discharge injunction does not enjoin actions against third parties who are also liable to the

plaintiff/creditor. By way of illustration, the Court offered, "[f]or example, a surety, who is secondarily liable to the obligee, is not shielded by the obligor's bankruptcy or section 524 injunction." *Id*. at 973 (citations omitted).

*Jet Florida System* contains a thoughtful examination of the provisions of § 524. It also surveyed a number of bankruptcy and appellate decisions, which addressed the questions raised in the case I address today. Ultimately, *Jet Florida* holds:

> We find that section 524(a) prohibits a plaintiff from proceeding against a debtor who has received a discharge of debt in order to recover from the bankruptcy estate. However, pursuant to section 524(e), a plaintiff may proceed against the debtor simply in order to establish liability as a prerequisite to recover from another, an insurer, who may be liable.

*Id.* at 976. The Court of Appeals reversed the bankruptcy court and remanded the case.

I reiterate that in this case the parties have stipulated that the Plaintiff/Claimant only seeks to proceed against available liability insurance; no claim is being pursued against the Debtor/Defendant's person, her property, or property of the estate. Stipulated Facts, 3, ¶ 13, ECF No. 38. The Stipulated Facts also include:

> Morris [Debtor/Defendant] is covered for the claims of Winebrenner [Plaintiff/Claimant] and her husband under a policy issued by Erie Insurance Exchange with bodily injury liability insurance coverage in the amounts of $100,000/person, $300,000/accident.

Stipulated Facts, 3, ¶ 10, ECF No. 38.

The Debtor/Defendant has cited the Sixth Circuit decision of *In re White Motor Credit*, 761 F.2d 270 (6th Cir. 1985). Br. of Debtor on Movant's Mot. For Relief from Injunction Under 11 U.S.C. §524, 5, ECF No. 30-4. That decision was rendered in what the Court described as "this large Chapter 11 reorganization proceeding, the procedural history of which we have described in more detail in earlier opinions." *Id*. at 271. In *White Motor*, when the petition was

11

filed, there were some 160 products liability claims pending again the debtor, a truck manufacturer. The pre-petition lawsuits were pending in various state and federal courts. Much of the opinion addresses how the contingent tort claims should be liquidated in the Chapter 11 case; as well as abstention issues under the bankruptcy jurisdictional scheme. *See 28 U.S.C. § 1334(c)(1) and (2).*

*White Motor* does address § 524, albeit briefly. In part, the Court of Appeals held that products liability claimants who had not filed proofs of claim should not be allowed to proceed to judgment against the debtor and its insurers in the actions pending in other courts. No authority is cited and little discussion is offered to support this conclusion. Further, the opinion includes, "[w]e express no opinion as to whether the District Court should permit the filing of late claims at this stage of the proceedings." *Id.* at 275.

*White Motor* is not controlling authority, nor do I find it persuasive. I do find it to be distinguishable. The case I write on is a no asset Chapter 7 case in which no proof of claim bar date was ever set. Thus, unlike the claimants in *White Motor*, the Plaintiff/Claimant never received a notice from the bankruptcy court advising her that she must file a proof of claim on or before a certain date. Also, *White Motor* was decided in the context of a large reorganization proceeding against a backdrop of more than 150 claims pending in state and federal courts. I consider today, in a reopened no asset Chapter 7 case, a single claim pending in a Pennsylvania state court.

Neither party has cited any controlling Third Circuit authority concerning the issue of the Plaintiff/Claimant's ability to pursue the Personal Injury Action. The Debtor/Defendant has cited a bankruptcy court decision from the Eastern District of Pennsylvania. In that case, Judge Fehling considered a plaintiff's motion to reopen a closed Chapter 7 bankruptcy so that she could

12

Case 1:14-bk-03161-RNO    Doc 42    Filed 04/28/17    Entered 04/28/17 11:13:34    Desc
Main Document    Page 12 of 15

"pursue a certain state court negligence claim against Debtor(s) arising out of an automobile accident that occurred before Debtors had initiated this bankruptcy." *In re Gutches*, 430 B.R. 342, 343-44 (Bankr. E.D.Pa. 2009).

In *Gutches*, like this case, the plaintiff only sought to pursue a damage claim against the debtors' insurer, not from the debtors' or their assets. While the basic facts in *Gutches* are similar to the case at bar, the matter at issue was quite different. The Court was considering a motion to reopen the Chapter 7 case under § 350; the debtors opposed reopening. In this case, the Chapter 7 was reopened on February 22, 2017, ECF No. 23, without any opposition. In *Gutches*, Judge Fehling used his discretion and ultimately denied the motion reopen. However, much of the reasoning in his decision cuts against the Debtor/Defendant's argument. *Gutches* approvingly cites other decisions holding that the exception from the discharge injunction created by § 524(e) permits a claimant to pursue a negligence action, post discharge, so long as any recovery is limited to available insurance coverage. Judge Fehling wrote, "Debtors' bankruptcy case need not be reopened to permit Burke-Corbin [claimant] to . . . continue her litigation against Debtor(s) to establish the liability necessary to proceed against Debtors' insurance carrier." *Id*. at 347. I conclude that while *Gutches* is procedurally distinguishable from the case at bar, its reasoning supports the Plaintiff/Claimant's position.

The Debtor/Defendant also cites *Gubbiotti v. Santey*, 52 A.3d 272 (Pa.Super.Ct. 2012) Br. of Debtor on Movant's Mot. For Relief from Injunction Under 11 U.S.C. §524, 7, ECF No. 30-4. *Gubbiotti* is a three-page opinion which considered an appeal from the grant of summary judgment in favor of the defendant in a personal injury action. In the trial court, the defendant pled his discharge in bankruptcy and the Pennsylvania Court of Common Pleas of Luzerne County granted summary judgment on that basis.

13

In *Gubbiotti*, the Pennsylvania Superior Court makes no mention of § 524. Further, there is no discussion of the discharge injunction, nor the exceptions thereto created by § 524(e). There are only two references to the Bankruptcy Code. First, to § 523, the exception to discharge provision; and, second, to § 727(b) which relieves a Chapter 7 debtor from personal liability for his discharged debts. Again, I underscore that a discharge does not extinguish the debt, it only relieves the debtor from personal liability. *In re Scantling*, 465 B.R. 671, 679 (Bankr. M.D.Fla. 2012); *Gutches*, 430 B.R. at 346.

Judge Munley discussed *Gubbiotti v Santey* in *Esposito v Bellotti*, 2013 WL 4041169 (M.D.Pa. Aug. 7, 2013). He considered a defendant's motion to dismiss a personal injury claim based upon the defendant's Chapter 7 bankruptcy discharge. Judge Munley noted, "*Gubbiotti* and *Strutz* do not discuss 11 U.S.C. § 524(e) -- the controlling section of the Bankruptcy Code at issue in this case." *Id*. at *3. Relying upon ample federal court authority, *Esposito* denied the defendant's motion to dismiss. *Id*. at *3-4.

The state court complaint alleges that the motor vehicle accident occurred in Waynesboro, Pennsylvania. The bankruptcy petition establishes that the Debtor/Defendant is a Pennsylvania resident. The Amended Complaint filed in the Personal Injury Action alleges that the Plaintiff/Claimant is also a Pennsylvania resident. I find it noteworthy that Pennsylvania law typically limits direct actions against an insurer to claims by its insured. *Strutz v. State Farm Mut. Ins. Co.*, 609 A.2d 569, 571 (Pa.Super.Ct. 1992) (injured plaintiffs were not third party beneficiaries of defendant's liability insurance policy and demurrer to direct action against insurer was affirmed). The Commonwealth Court of Pennsylvania has opined, "the general rule in Pennsylvania is that direct actions against insurance companies are not allowed." *Com., Dept. of General Servs. v. Celli-Flynn*, 540 A.2d 1365, 1367-68 (Pa.Commw.Ct. 1988).

It has been stipulated that the Debtor/Defendant's costs of defense for the Personal Injury Action will be paid by her insurance carrier. The stipulated costs of defense include attorney and expert witness fees, as well as transcription costs. Further, any transportation expenses or wages lost due to required attendance at depositions or court proceedings will be reimbursed up to a maximum of $300.00 per day. Stipulated Facts, 5, ¶ 20, ECF No. 38.

The Debtor/Defendant may experience some inconvenience if the Personal Injury Action is allowed to proceed. However, if the Debtor/Defendant's argument prevails, it would effectively leave the injured Plaintiff/Claimant with no legal mechanism to seek recovery for her injuries. I conclude that § 524(e) evidences a clear Congressional intent that an insurer cannot avoid its responsibility under an issued policy merely because of an insured's bankruptcy. Rather, the Defendant's discharge ". . . does not affect the liability of any other entity [Debtor/Defendant's insurer] on, . . . such debt." 11 U.S.C. § 524(e).

## IV. Conclusion

I will grant the Motion and enter an order allowing the Plaintiff/Claimant to proceed with the Personal Injury Action. The order will also provide that any recovery in that action must be limited to applicable insurance coverage.

By the Court,

Robert N. Opel, II, Chief Bankruptcy Judge
(BI)

Dated: April 28, 2017